## LIBERTY CENT. TRUST CO. OF ST. LOUIS, MO., et al. v. GILLILAND OIL CO.

(District Court, D. Delaware. March 20, 1923.)

No. 434.

1. Bills and notes ⬅126—Attorney's fees in receivership recoverable under terms of note.

Under a provision in notes, "if not paid at maturity we agree to pay all costs of collection, including reasonable attorney's fees," payee was entitled to recover for services of attorney in connection with examination of assets during a receivership negotiation without appearance in court, but the fees should be limited to the notes collected which were matured.

2. Receivers ⬅152—Rule as to fixation of rights as of date of appointment held not applicable.

The rule that the rights of all parties are fixed as of the time of the appointment of the receiver, and that no claim for services thereafter rendered may be sustained, is only a rule of convenience in the administration of bankrupt or insolvent estates, and not applicable where the estate is more than ample to discharge all claims.

3. Bills and notes ⬅126—Services of creditor in receivership proceeding not affecting attorney's fees for collection of note; "collection services."

Services rendered by a creditor in a receivership proceeding, or his attorney, in connection with the gathering in of assets and converting them into cash and distributing them to those entitled thereto, are administrative acts, for which under exceptional circumstances equitable costs are at times allowed; but such services, when rendered by a creditor through his attorney, are not "collection" services, within the meaning of a provision in a note permitting reasonable attorney's fees.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Bills and notes ⟨key⟩126—Filing of claims in receivership by attorney, a collection act within terms of note.**
    The filing of claims after appointment of receivers was a collection act, and not an administrative one, for which creditor was entitled to reasonable attorney's fees under a provision in a note.

In Equity. Proceeding by the Liberty Central Trust Company of St. Louis, Mo., and another against the Gilliland Oil Company, in which a receiver was appointed. Heard on exceptions to master's report on claims of Morris A. Quilter. Exceptions sustained in part, and overruled in part.

Robert H. Richards, of Wilmington, Del., for receivers.
E. Ennalls Berl, of Wilmington, Del., for claimant.

MORRIS, District Judge. Receivers having been appointed by this court for Gilliland Oil Company, a Delaware corporation, Morris A. Quilter filed in the cause his proofs of claim for principal, interest, and an additional 10 per centum as attorney's fee for collection of five promissory notes of the Gilliland Oil Company, each containing the following provision:

"If not paid at maturity, we agree to pay all costs of collection, including reasonable attorney's fee, if placed in an attorney's hands for collection."

The receivers, not questioning the amounts claimed for principal and interest, excepted to the items for attorney's fees. The master to whom the claims and exceptions were referred disallowed the challenged items. The matter is now here upon exceptions to the master's report.

One note, dated March 20, 1921, for $10,895, due June 18, 1921, on which $5,000 was paid at maturity, was placed by Quilter in the hands of his attorneys for collection on June 20th. Receivers were appointed for the Gilliland Oil Company by this court July 6th upon bill and answer admitting insolvency. The remaining notes, aggregating upwards of $46,000, were placed by Quilter in the hands of his attorneys between July 30th and August 15th as they severally matured. Each was made in Tulsa, Okl., is there payable, and provides for the payment of interest at the rate of 8 per cent. per annum from its date. Quilter agreed to pay his attorney 10 per cent. of the principal and interest of the notes. The Gilliland Oil Company was an oil and gas producing company, having property in Louisiana, Oklahoma, Texas, and Kansas. On June 22d it conveyed its Louisiana property, alleged to be worth upwards of $6,000,000 to Foster Oil Company for about $2,500,000. Receivers were appointed June 27th by the state court of Oklahoma, and a few days later by the state court of Louisiana. Soon after the appointment of receivers by this court, the state receivers were discharged and ancillary receivers were appointed by the federal courts in the several districts in which the property was located.

Quilter's attorneys, residents of Houston, Tex., seem to have taken no step looking to the collection of the first note until June 27th.

Being then advised of the conveyance of June 22d, the attorney having immediate charge of Quilter's claim went, at the request of Quilter, to Shreveport, and for two days examined the conveyances and bills of sale and conferred with creditors. He then went to Tulsa, made an investigation of the assets in Oklahoma, made inquiries as to the liabilities of the company, its assets in states other than Louisiana and Oklahoma, conferred with the receivers and creditors to the end that the property conveyed to Foster Oil Company might be recovered and that the receivership suits in the state courts might be dismissed and like suits in the federal courts instituted.

After the appointment of the receivers a lengthy and detailed offer of Foster Oil Company for the rescission of the contract of sale of June 22, 1921, was made to the receivers of Gilliland Oil Company. The offer so submitted was made subject to approval by substantially all of the creditors and stockholders, preferred and common, and the District Court of the United States for the Western District of Louisiana. A copy of the offer was sent by the receivers to each creditor and stockholder. Quilter submitted to his attorney the question of approval or disapproval. The attorney considered the offer and the advisability of its acceptance by Quilter. He likewise attended the hearing thereon, and had certain conferences with other creditors or their counsel, for the purpose of obtaining a better offer for the receivers. Quilter's attorney likewise filed a petition of intervention in the United States District Court for the Western District of Louisiana. Upon being advised of the appointment of a special master by this court to take proofs of claims, the petition of intervention was withdrawn or abandoned. The attorney made out and filed the proofs of claim before the special master. The attorney also attended a creditors' meeting in St. Louis to consider some plan of reorganization of the Gilliland Oil Company or for the sale of its property. In attending to all the foregoing matters both before and after the appointment of the Delaware receivers Quilter's attorney was away from his office 25 days and while in his office devoted much time to the matter of Quilter's notes.

[1] The receivers admit the validity of the attorney's fee clause, but deny that Quilter's attorneys rendered any services within the intendment of that clause. It is made clear, both by the express wording of that clause and by the decided cases, that Quilter's right to indemnity for attorney's fees pertaining to any particular note extends only to fees for services rendered after the maturity of that note, is then restricted to fees for collection services, and is limited in amount to such sum as the evidence shows to be reasonable. McCabe v. Patton, 174 Fed. 217, 98 C. C. A. 225 (C. C. A. 3); British-American Mortgage Co. v. Stuart, 210 Fed. 425, 427, 127 C. C. A. 157 (C. C. A. 5); Mechanics-American Nat. Bank v. Coleman, 204 Fed. 24, 29, 122 C. C. A. 338. (C. C. A. 8). In the absence of bankruptcy, receivership, or other judicial sequestration of the property of the debtor, I think the rule laid down by the Appellate Court of Indiana in Monroe v. Staser, 6 Ind. App. 364, 32 N. E. 563, 33 N. E. 665, that "the services contemplated by the contract, and which an at-

torney at law would be required to render, are not alone to prosecute
an action in the courts, but such services as he may render, by reason
of his special qualifications to procure the desired result for his client,
either with or without a resort to the courts to enforce such rights,"
may be safely followed. ·

In the light of this rule and bearing in mind that the state receivers
were not appointed at the domicile of the corporation, and that con-
sequently the receivers thus appointed were not receivers of and for
the corporation, but only·of the assets in the states of their appoint-
ment, and that the corporation had assets elsewhere, I think that the
services rendered by Quilter's attorneys prior to  the appointment of
the Delaware receivers were collection services within the intendment
of the attorney's fee clause in the note, and that the performance of
such service was reasonably necessary under the circumstances.   I see
no ground upon which a fee of 10 per cent for those services may be
held to be unreasonable, but as only one note had then matured the
fee for such services must be limited to that note.

[2, 3] The receivers contend that it is a general rule with respect to
the administration and liquidation of receivership estates that the
rights of all parties are fixed as of the time of the appointment of the ,
receiver and that no claim for services thereafter rendered may be sus-
tained.   In support of this contention they cite Brown v. Massachusetts
Hide Corp., 218 Fed. 769, 134 C. C. A. 447; Thomas v. Taggart, 209 U.
S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845; Zartman v. Bank, 216 U. S. 134,
30 Sup. Ct. 368, 54 L. Ed. 418; 2 Tardy's Smith on Receivers, §
594, p. 1660; Trust Co. v. Lombard Investment Co. (C. C.) 73 Fed.
537.   That rule seems, however, to be only a rule of convenience in
the administration of bankrupt or insolvent estates, and not applicable
where the estate is more than ample to discharge all claims.   Tardy's
Smith on Receivers, vol. 2, p. 1678; Citizens' Bank & Trust Co. v.
Thornton, 174 Fed. 753, 98 C. C. A. 478; American Iron & Steel Manu-
facturing Co. v. Seaboard Air Line Railway Co. et al., 233 U. S. 261,
34 Sup. Ct. 502, 58 L. Ed. 949.

The receivers here concede that the receivership estate will in all
probability be more than sufficient to pay all creditors.   Consequently
the principle thus urged by the receivers cannot be here applied.   There
are, however, other principles involved in the determination of the
right of the claimant for indemnity for counsel fees for services
rendered after the appointment of the receivers.   Such appointment
suspends the rights of creditors to collect their debts from the prop-
erty of the debtor by the usual processes of law.   Property in the
hands of a receiver is wholly within the jurisdiction of the appointing
court for administration and distribution according to the priorities
and liens of the persons interested.   Hayes v. Columbus, L. & M. Ry.,
Co. (C. C.) 67 Fed. 630; In re Tyler, Petitioner, 149 U. S. 164,
13 Sup. Ct. 785, 37 L. Ed. 689.   The effect of a receivership upon
creditors' claims "is to substitute for the right of action in personam
theretofore existing a right to a proportional share of the impounded
assets."   Clark on Receivers, vol. 1, § 755.   The duties of gathering
in the assets, converting them into cash, and distributing them to those

entitled thereto, devolve upon the appointing court and its receivers. Such acts are acts of administration. Services rendered by a creditor or his attorney in connection with such matters are likewise administrative acts, for which under exceptional circumstances equitable costs are at times allowed. Ross v. South Dela. Gas Co., 10 Del. Ch. 236, 89 Atl. 593; Clark on Receivers, § 840; Tardy's Smith on Receivers, § 639; Meeker v. Winthrop Iron Co. (C. C.) 17 Fed. 48. But I fail to see how such services, when rendered by a creditor through his attorney or otherwise, can be considered as "collection" services. Moreover, an inevitable corollary of the provisions in the notes and the principle that the fees recovered must be reasonable is that fees may not be recovered for services that were not reasonably necessary under the circumstances.

[4] I do not find that any service, other than the preparation and filing of the proofs of claim, rendered by the attorneys for Quilter after the appointment of the Delaware receivers, either appeared to be or was even remotely necessary to the collection of the Quilter notes, or even beneficial to the receivership estate. See first National Bank v. J. I. Campbell Co., 52 Tex. Civ. App. 445, 114 S. W. 887. As I view the matter the only opportunity for collection services after the appointment of receivers is in the preparation and filing of claims. This, I take it, is a collection act, not an administrative one. As Quilter's attorneys performed this service with respect to the four notes maturing after the appointment of the receivers, I think Quilter is entitled to be indemnified to the extent of reasonable fees therefor. That, however, was a simple matter, for which a fee of $50 for each of the four proofs of claim filed is, in my judgment, ample..

To the extent herein indicated, the exceptions to the master's report will be sustained. In all other respects, the exceptions must be overruled.